The next case, number 23-1156, Elaine Glody-Quirjosa-Bedose v. Merrick B. Garland. Would counsel for the petitioner please introduce himself on the record to begin? Good morning. May it please the court, my name is Gregory Romanofsky and I represent the petitioner, Mr. Bedose, who is here in the courtroom today along with his U.S. citizen wife. With this court's permission, I would like to reserve two minutes for rebuttal. You may. Thank you. The most obvious error in the BIA's decision, in the BIA's denial of my client's appeal, was its denial of the motion to remit. The BIA denied an opportunity for Mr. Bedose to seek adjustment of status, a newly acquired form of relief. This motion was not even opposed by the government itself. A motion to remand is different from a motion to reopen. It's that a motion to remand is not asking to disturb a decision that has already been made. A motion to remand is filed when the case is still pending. So Mr. Bedose's case was pending with the BIA. He became eligible for a new form of relief based on his marriage to a U.S. citizen. And he promptly asked the BIA to remand the case back to the immigration judge to consider his application for adjustment of status. It is a very common step to take in this situation. It is very common for the BIA to remand these cases back to the immigration judge, especially when the motion is not opposed. Primarily because it is the immigration judge's and not the BIA's job to engage in fact-finding and determine whether the person is eligible for the new form of relief he has. Counsel, are you saying that the BIA was, given the circumstances you described, obligated to remand? Was there any room for judgment of some kind as to whether they should remand? Yes, Your Honor, of course. Even though these motions are routinely granted, they're not automatic. Even if the motion is not opposed, the board can deny remand. But the law is very clear, and the government concedes that the law is very clear, the BIA can only deny remand based on one of the following three grounds. Number one, if the person is not prima facie eligible for the relief he's seeking. There's no question here. Mr. Badosi's I-130 petition had been approved by the Department of Homeland Security. He was prima facie eligible and continues to be prima facie eligible for adjustment of status. Number two, the new form of relief is not really new and should have been asserted before the immigration judge. No question here either. Mr. Badosi's I-130 petition was approved when the case was already on appeal with the BIA. And number three, the board can, quote, unquote, leap ahead, consider whether the new evidence would change the outcome of the case. And if so, if they don't think that it would change the outcome of the case, they can deny remand. So this is the government's only argument, that the BIA somehow leapt ahead and considered Mr. Badosi's eligibility for adjustment of status. So what's wrong with that argument? I'm sorry, Your Honor? What's wrong with that argument? Why shouldn't we consider this a valid exercise of the board's discretion? Because there was no leaping ahead, Your Honor. The record clearly shows otherwise. There was no analysis whatsoever as far as the remand criteria. In fact, it looked like at that point the BIA had already written its decision on the underlying appeal and suddenly realized that now they had this remand motion that they had to deal with. So they threw in a little paragraph at the end, a ten-line paragraph, explaining why they don't think that the case should be remanded. There was no leaping ahead. It was a ten-line discussion with six legal errors, and two of these errors are not even being disputed by the government. So there was no leaping ahead. This is where the key difference lies. The BIA did not have discretion to foreclose Mr. Badosi's ability to seek new form of relief. They had discretion to leap ahead and do the analysis. Was he eligible for adjustment of status? Let me give you an example of what a proper leaping ahead would have looked like. They could have said, okay, let's see if Mr. Badosi is eligible for adjustment of status. Is he prima facie eligible? Yes. Okay, but will his application be granted? We see some inconsistencies in the record. Does that mean he committed a misrepresentation? If so, was this misrepresentation material? Because this is important for purposes of adjustment of status, much more important than it is for an asylum determination. For adjustment of status, misrepresentation must be material to trigger inadmissibility. Okay, so was there material misrepresentation? Is there a waiver available to Mr. Badosi? Does he have a qualifying relative? Is he eligible for a waiver as a matter of discretion? Is he eligible for adjustment of status in general as a matter of discretion? Nothing was done. Nothing like that was done at all. It was just that. So, counsel, when you say leaping ahead, are you suggesting that, and they clearly did not do this, or at least it doesn't seem that they did it, but they could have, on appeal, sort of repeated or anticipated what the analysis might be below as to whether there should be an adjustment of status and sort of done the analysis themselves that might be done below by the IJ? What does it mean to say they could leap ahead? I'm asking could they have anticipated what the decision below would have looked like and said we just don't see it happening for the petition? Exactly. This is what the case law seems to suggest. I personally find it terribly confusing, but this is what the case law seems to suggest, that the BIA can sort of do the work for the immigration judge and say, yeah, we're going to remand, but what's the point? The immigration judge is going to deny it anyway. We're not going to waste our time. But there was no analysis like this in this case. Are you saying that's based upon the record evidence that would be before the board to assess its exercise of discretion? That is correct, Your Honor. Okay. Counsel, can I ask you to address the other argument you made, which was that the BIA did engage in some fact-finding here, but it was improper, which was specifically about suggesting that the marriage was not valid? How does that interplay with your argument that you just made that it didn't leap ahead? So what I argued in my briefs, Your Honor, is that they did not leap ahead, but even if we assume that they did, even if we interpret this 10-line paragraph as they're leaping ahead and considering my client's eligibility for adjustment of status, the three reasons that they gave make absolutely no sense. So the first one, to respond to your point, is the respondent's marriage occurred and the visa petition filed after the immigration judge's denial, and thus the respondent was aware that his status was at jeopardy. This makes no sense, especially when the Department of Homeland Security had already examined the marriage, found the marriage bona fide under the heightened standard. They have a child together. I'm not even sure what the board is saying here, but they seem to suggest that there's an issue with the marriage. And this is impermissible fact-finding, because clearly there is no issue, but there was no issue with the marriage, and it was documented by the approved I-130 petition. The second reason they give in this 10-line paragraph is because we have found no clear error in the immigration judge's adverse credibility finding, which included a finding of lying to immigration officials to obtain a visa. The respondent's lack of candor is a further negative discretionary factor. I'm not sure what the word further here is referring to. May I finish? You may finish. Thank you. But the lying to immigration officials, that premise, as I explained in my brief, it's based on an incorrect review of the record. There was an initial suspicion that my client had submitted fraudulent bank statements in support of his visa application, F-1 visa application at the consulate, but nobody actually reviewed the record. The immigration judge didn't. The BIA didn't. Page 738 of the administrative record clearly shows that the consular officer eventually verified the authenticity of the bank statements and found the bank statements to be credible and issued the visa. So this whole notion that the respondent is quote-unquote comfortable lying to immigration officials to get a visa is based on a faulty review of the record. And last, and also very importantly, it says beyond his recent marriage, the respondent has not identified any positive equities or extraordinary factors that would overcome the negative factors identified above. This is clearly wrong. The record reflected that the couple had a U.S. citizen child, among other things. So the board just didn't do, they took a shortcut. They didn't do a good enough job reviewing the record and analyzing my client's eligibility for remit. Thank you, counsel. Thank you, counsel. If counsel for the respondent would please introduce herself on the record to begin. May it please the court, Jennifer Bowen on behalf of the respondent, Merrick B. Garland, U.S. Attorney General. I'd like to first address the argument that petitioner's counsel just made with respect to the record showing that the third consular officer validated the bank statements. Why don't you start with the fact-finding? The fact-finding? Yes, Your Honor. Your Honor, the board's decision must be read within the context of the motion to remand. The motion to remand, because petitioner had the burden to show that he was entitled to this discretionary relief he was seeking. He asked the board to remand it for him to pursue a discretionary relief. He had the burden to show that as a matter of discretion, he would be entitled to this. So he comes forward with a motion to remand in which he asserts merely that he has an approved I-130, that the evidence was not previously available, that he is not inadmissible, and that his spouse meets the affidavit of support requirements. Otherwise, there's no other arguments in the motion to remand that show he could meet his burden to merit this discretionary relief. But, counsel, the government didn't oppose the motion to remand, right? No, Your Honor. DHS did not oppose the motion to remand, but there's no requirement that the board grant a motion to an unopposed motion to remand. But do you think it would be inappropriate to remand, given that the government initially didn't oppose it? Your Honor, I don't believe the question is whether it would be inappropriate or not inappropriate. I think the question is whether or not the board abused its discretion. And I don't believe that choosing to not abuse its discretion was, I mean, choosing to not remand was an abuse of discretion. Well, we have the right to look to see how the government has handled these matters in the past to see if it acted arbitrarily in this case. And counsel cites cases where when the government didn't object, the remand was granted. Right, Your Honor, but we don't have the records in those cases to look and see. He may tell us that there are certain adverse factors with those petitioners, but we don't know which arguments they put forward for their positive factors. We can't see the entirety of those cases. We don't have the records. We have the record here, and that's all that we're capable of reviewing. And the question is whether or not here, based on the record, based on the motion, and based on it having been petitioner's burden of proof, the board abused its discretion in finding and leaping ahead and finding that he had not shown that he would merit that exercise of discretion. So they, so your argument is in this very, I would characterize it as a very summary way, they did leap ahead and looking at the record, looking at the positive and negative factors, they anticipated that the decision below would be that the petitioner is not eligible for adjustment of status, so why send it back given the futility of it all? Is that what's going on here? I would word it slightly differently, and I think it does matter. It's not that he wouldn't have been eligible necessarily. The prima facie eligibility was not questioned. He has to show that he would merit this exercise of discretion. So it's not a question of whether he was eligible, but whether or not he would put forth positive equities that would outweigh his negative equities to merit the exercise of discretion. Are you arguing that he didn't put forward enough positive equities on these facts? That is the board's decision, Your Honor, yes. I guess I'm asking you, what's your argument for why that wasn't an abuse of discretion here? I apologize, Your Honor. The government's argument is that based on the record and the board looking at the motion to remand, in light of the negative factors, it did not abuse its discretion in leaving ahead, weighing those, and finding he had not put forth enough to warrant the exercise of discretion. Exactly. I understand that's your argument. I'm saying why aren't the positive equities here clearly outweighing the one argument about the bank statements, right? If the board looked ahead, can you elaborate on why you think ultimately it did the weighing correctly here in a way that didn't abuse its discretion? So the board – I apologize if I'm not understanding. The board looked at the adverse credibility, including the lying to immigration officials, which the record does support, and I can get into that. The record does not show that the false bank statements submitted with the second visa application were ever authenticated. I can get into that if that's what you're asking. Let me put it slightly differently. The board said that he hadn't put forth any positive equities beyond his marriage. Yes, Your Honor. The record indicated that he had an American-born child, that he paid taxes in the country, that he never committed any crimes. All of that's in the record, and the board never talked about any of those as being positive equities like they so often do. Your Honor, that is correct. The board's decision does not address that. Notably, petitioner's motion does not address it, but there's no dispute that that information is in the record for the board to have seen. And reading the board's decision, it would be an inference to – speculation, rather, to say that they didn't consider that, where they know that there – he doesn't – the board's decision does not say he doesn't identify any positive factors. It says beyond his marriage. Well, it says – right, that would overcome the negative factors. So that – a reasonable reading of that would allow for the board to have addressed – evaluated those but still decided it didn't overcome the negative factors identified, including the adverse credibility finding, which included lying to immigration officials. Counsel, what is the fact that the petitioner's wife was successful with the visa petition that she filed on his behalf? What is the significance of that success? What does that signal that that petition was successful? Does it only go to the legitimacy of the marriage? Or does it indicate other evaluations about the petitioner as well? I believe it goes to his prima facie eligibility to seek adjustment of status. So that is the first criteria, and that was not questioned. His prima facie eligibility was not questioned. Well, the board seems to have questioned it. Your Honor, I understand that petitioners – Because the board talked about its timing relative to his pending request for asylum. Yes, Your Honor, but I – I mean, which clearly suggests that the board made a determination that it wasn't a valid marriage, contrary to what the other side of your agency found, by clear and convincing. Your Honor, I would put forward the argument that a reasonable interpretation of the board's decision, where they note that the marriage occurred in the visa petition filed after the immigration judge's denial, and thus the petitioner was aware that his status was in jeopardy, speaks more to the brevity of the motion to remand and his burden of proof and not putting forward more as to why he would merit exercise of discretion. You know, the board seems to respond with considerable suspicion about the timing of the marriage, then talks about lack of candor and lying to immigration officials. To me, it sounds like the board is saying the marriage was just more of the same. It's just more fraudulent conduct. The timing of the marriage is suspicious. There's evidence in this record that he has lied, that there was a lack of candor. We see a pattern here of deception, and to me, that is not just a fair but an almost inescapable reading of what the board is saying here. Your Honor, Respondent respectfully reads it differently, but if that is how the court reads it, then Respondent accepts that a remand would be the appropriate action for the board to clarify, whether it was taking the timing into consideration or merely noting that, after the immigration judge's decision, the petitioner had the burden to address the adverse factors. So you're suggesting we should give the board an opportunity to explain itself better? Is that what you mean? Your Honor, I would argue that the board did explain itself, but if the court reads the board's decision as possibly questioning the timing of the marriage, then the only recourse is remand. This is a matter of discretion, Your Honor, the only eligibility here. It's either that the court reads it as Respondent is asserting that it merely goes to petitioner's burden and he would have been aware of the negative factors that were addressed by the immigration judge, which he chose not to address in his motion to remand. If I might just explore that. You're suggesting that there was something deficient in the motion to remand itself? No, Your Honor, I'm not suggesting that the motion to remand was necessarily deficient. I'm merely noting that petitioner had the burden of proof. This is a discretionary relief that he's seeking. So he has the burden to show that his positive equities outweigh his negative equities, and yet he comes forward with a motion to remand that does not address any of the negative equities, the adverse credibility finding by the immigration judge, even though he would have been aware of that when he was married, when I went there as well. So you are saying that the motion was deficient, that the motion just seemed to assume an entitlement to remand. The motion did not make the case for it that should have been made. Is that what you're saying? Yes, Your Honor, I apologize. I misunderstood what you were saying. Okay, all right. Thank you. Thank you, counsel. Thank you. Thank you, counsel. At this time, would counsel for Petitioner Bedozy please reintroduce himself on the record to begin? He has a two-minute rebuttal. Thank you. Greg Romanofsky for the petitioner, Mr. Bedozy. First of all, I wanted to address Judge Lopez's question about the function of the I-130 petition, and just to confirm your understanding, Your Honor, that it is the wife's petition. It serves as the foundation, so to speak, of the structure that Mr. Bedozy would build on that foundation. However, it does address the legitimacy of the marriage. I also wanted to address a couple of points raised by the government's attorney. They're saying we did not have the record in all of those BIA cases that we cited and we don't really know what happened. We do know what happened because the BIA decisions clearly spell out the pros and cons. They say, okay, terrible criminal record, repeated fraud, but the IJ is a better person to do the fact-finding and determine whether the person is eligible for relief. Also, the government is claiming that the record is not conclusive, that the bank statements had, in fact, been authenticated. It is. Again, it's page 738 of the administrative record, which clearly says that the bank statements had been verified. Even if we take the government's reading saying that it could have been these bank statements but not the prior bank statements, this reading doesn't make any sense because the consular officer could not have and would have never issued the visa if the consular officer thought that Mr. Bedozy had committed fraud in the past. Mr. Bedozy would have been inadmissible under Section 212 AC6 of the Immigration Nationality Act for having committed a misrepresentation. A visa could not have been issued unless the consular officer believed that all of the bank statements had been authenticated. And finally, is Mr. Bedozy eligible for favorable exercise of discretion on his adjustment of status application? This is for the immigration judge to decide. Is he worthy of a chance to present his case? To say that he isn't, I think, is unnecessarily harsh and is contrary to the law. Before you leave that point, does the case law suggest that the petitioner is supposed to anticipate this leap ahead look at that particular moment when he's got a petition pending and also an appeal? I apologize, Your Honor. The leap ahead. Yes. In this instance, it came up in the context of the motion to remand that was simultaneous to his appeal. Correct. Is the petitioner supposed to anticipate at that point that the BIA, rather than remanding, could conceivably do the leap ahead look? Yes. As strange as it sounds, the petitioner should anticipate that. We would respectfully suggest that it is, since it is so routine for the BIA to remand in this situation where the motion is not even opposed, the burden on the person seeking remand is not as high. But, yes, of course, we could and should have anticipated that the board could look at the case, at the adjustment eligibility in the future and examine whether Mr. Vitozzi was eligible for adjustment as a matter of discretion. But I, again, respectfully suggest that the motion to remand had enough information and enough facts, enough positive factors that the board simply did not examine. Counsel, let me ask you one last question. Yes. We are considering sending this case to camp, and I'm wondering what your response to that would be on behalf of your client. My client would be open to any and all resolution that the court thinks is fair in this case, given how improper the BIA's decision was and given how obvious the remand decision, the decision to remand was, how obvious it was that the case should have been remanded. I think the best strategy would be to send it to the IJ. The case should have been remanded to the IJ in the first place, but we would be open to camp as well. Thank you. I just want to give your colleague a chance to respond. Thank you very much. I'm sorry. I didn't hear your response. She's willing. Willing to send it to camp. Thank you. Thank you. Thank you. Thank you very much. Thank you, counsel. That concludes argument in this case.